873 So.2d 56 (2004)
COVINGTON PONTIAC-BUICK-GMC TRUCKS, INC. and Eddie Pablovich
v.
AAA SEWER & WATER FABRICATION & SERVICE, LLC, David Guidry, Abc Insurance Company and Xyz Insurance Company.
No. 2002 CA 2676.
Court of Appeal of Louisiana, First Circuit.
February 13, 2004.
Writ Denied May 7, 2004.
*57 Robert C. Lowther, Jr., Covington, for Plaintiffs/Appellants, Covington Pontiac-Buick-GMC Trucks, Inc. and Eddie Pablovich.
Julian J. Rodrigue, Jr., Covington, for Defendant/Appellee, St. Tammany Parish Clerk of Court.
Before: WHIPPLE, KUHN and McDONALD, JJ.
KUHN, J.
Plaintiffs-appellants, Covington Pontiac-Buick-GMC Trucks, Inc. and Eddie Pablovich (collectively Covington Pontiac), appeal the trial court's dismissal of their rule to traverse answers filed by Malise Prieto, the St. Tammany Parish Clerk of Court (the clerk of court), in response to the garnishment interrogatories with which she was served. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
Covington Pontiac is the judgment creditor of defendants, AAA Sewerage and Water Fabrication and Service, LLC (AAA) and David Guidry. In an attempt to execute a judgment, Covington Pontiac conducted a judgment debtor examination, which revealed that funds in a community property proceeding between David Guidry and his former wife, Cynthia, were held in the registry of the Twenty-second Judicial District Court.
On October 15, 2001, Covington Pontiac filed a petition for garnishment under a writ of fieri facias, naming the clerk of court as garnishee. Averring that the clerk of court was in possession of the money held in the court registry in the matter entitled, Guidry v. Guidry, docket number 98-13642, (the Guidry community property proceeding) in which David Guidry had an undivided interest, Covington Pontiac alleged that the clerk of court was indebted to its judgment debtor. On October 19, 2001, a judgment was signed naming the clerk of court as a garnishee and ordering her to answer the garnishment interrogatories. The clerk of court was served the petition, citation, and interrogatories on October 29, 2001.
The clerk of court subsequently filed sworn answers to the garnishment interrogatories. Urging the clerk of court's responses were erroneous, Covington Pontiac filed a rule to traverse. After a hearing, in which testimonial and documentary evidence was adduced, the trial court found that the clerk of court's answers to the garnishment interrogatories were not erroneous and rendered a judgment, dismissing Covington Pontiac's rule to traverse. This appeal followed.[1]

DISCUSSION
A garnishment proceeding is a separate and distinct proceeding from the original suit and is between different parties. *58 La. C.C.P. arts. 2411-2417; Ransome v. Ransome, 2001-2361, p. 8 (La.App. 1st Cir.6/21/02), 822 So.2d 746, 754. It is nothing more than a streamlined legal process for obtaining the seizure of property of a judgment debtor in the hands of a third party. All Star Floor Covering, Inc. v. Stitt, 2000-2049, p. 4 (La.App. 1st Cir.11/14/01), 804 So.2d 705, 708, writs denied, XXXX-XXXX, XXXX-XXXX (La.4/19/02), 813 So.2d 1085, 1088.
After the issuance of a writ of fieri facias, a judgment creditor may, through a petition for garnishment naming a third person as garnishee, require the garnishee to declare under oath what property he has "in his possession or under his control" belonging to a judgment creditor. La. C.C.P. art. 2411A; Rapier v. Harris, 614 So.2d 301 (La.App. 4th Cir.1993). The garnishment seizure is effective upon service of the petition, citation, and interrogatories. La. C.C.P. art. 2411B. Other than as is statutorily applicable to garnishments of wages, a garnishment shall not be continuing in nature, and the garnishee need only respond as to property of the judgment debtor that the garnishee has in his possession or under his control at the time the garnishment interrogatories are served on him. La. C.C.P. art. 2411C.
Where the garnishee's answers admit that he does indeed hold something belonging to the debtor, a garnishment judgment is then entered, ordering the garnishee to deliver the thing to the sheriff. La. C.C.P. art. 2415; All Star Floor Covering, Inc., 2000-2049 at pp. 4-5, 804 So.2d at 708. If, on the other hand, the garnishee denies possession of any of the judgment debtor's property, the judgment creditor may file a contradictory motion traversing the answer. La. C.C.P. art. 2414; Ransome, 2001-2361 at p. 8, 822 So.2d at 754.
On appeal, Covington Pontiac suggests the trial court erred in dismissing its rule to traverse because the evidence at the hearing showed the clerk of court's answers to its interrogatories were erroneous and misleading.
The seminal facts show the following. The money held in the court registry in the Guidry community property proceeding was the subject of competing claims. On June 20, 2001, the Division G trial judge signed an order in the Guidry community property proceeding, directing the sum of $88,683.74 be placed in the court registry. That same day, the Division G trial judge also signed a consent judgment, ordering $44,683.74 of the deposited money disbursed to Cynthia Guidry and the remaining $44,000.00 to David Guidry.
Nine days prior to rendition of the Division G consent judgment between the Guidrys, on June 11, 2001, Unicorn Nursery Inc. (Unicorn), had filed a petition in Division B of the Twenty-second Judicial District Court, averring that Cynthia Guidry d/b/a AAA was its judgment debtor, naming the clerk of court as garnishee, ordering an answer to a single garnishment interrogatory, and requesting a writ of attachment on the deposited money. The writ subsequently issued on June 11, 2001, which expressly included "one half of those funds presently on deposit with [the clerk of court]" held in the court registry in conjunction with the Guidry community property proceeding.
On June 20, 2001, after the Division G trial judge had signed the consent judgment addressing the disbursal of the money held in the court registry, Cynthia Guidry apparently learned of the pending Division B garnishment proceeding, and filed a motion in the community property proceeding, requesting that the Division G trial court "freeze" the money held *59 in the court registry.[2] This motion was granted by the Division G trial judge. Thus, the last order of Division G on June 20, 2001, stayed the consent judgment of disbursal signed earlier that day; and ordered a "freeze" on the money held in the court registry. The contradictory hearing, which followed on August 9, 2001, resulted in the Division G trial judge's express order stating that the money held in the court registry was not to be disbursed until further order of the court.
Unaware of the Division G order of August 9, 2001, precluding disbursal of the money in the court registry, on September 25, 2001, on a joint motion of Unicorn and David Guidry, the Division B trial judge signed an order, which directed disbursal of a portion of the money in satisfaction of Cynthia Guidry d/b/a AAA's debt to Unicorn. But on September 26, 2001, the Division B trial judge, having learned of the August 9, 2001, Division G order, issued another order, which vacated her September 25, 2001 order of disbursal to Unicorn and ordered that the money in the court registry be "frozen" until further order of the court.
On October 23, 2001, eight days after Covington Buick filed its petition for garnishment but six days before service of the interrogatories was made on the clerk of court, the Division G trial court addressed the merits of David Guidry's interest in the money on deposit in the court registry. In its written reasons, after noting that the prior, June 20, 2001, consent judgment between the Guidrys had settled all issues between them, the Division G trial judge concluded that it lacked authority to maintain Cynthia Guidry's request for a stay and signed a judgment disbursing $46,500.00 of the money held in the court registry to David Guidry.[3] The October 23, 2001 judgment specifically ordered that the clerk of court "disburse the sum of $46,500.00 ... to David C. Guidry."
It is axiomatic that a district court clerk of court deposits and withdraws sums into the court's registry in accordance with orders issued by the district court. See La. R.S. 13:760 (providing immunity from liability to clerks of court who perform any act or issue any order in conformity with the written order or judgment of any judge of a court); see also La. R.S. 13:476 (providing that specified deposits made into the court registry shall be made and withdrawn by the clerk of court only in accordance with the provisions of the order or judgment of the court having jurisdiction).
In her sworn answers to Covington Pontiac's garnishment interrogatories filed on November 6, 2001, the clerk of court denied that she had in her possession or *60 under her control any property or funds belonging to David Guidry, while noting that the sum of $93,749.04 had previously been on deposit in the court registry in the Guidry community property proceeding. The clerk of court's answers expressly stated that pursuant to a court order of disbursement, signed by the trial judge of Division G on October 23, 2001, $46,500.00 of the $93,749.04 previously on deposit in the court registry had been released to David Guidry.[4] The record clearly establishes that on October 23, 2001, when the Division G trial court ordered disbursal of $46,500.00 to David Guidry, the clerk of court had not yet been served Covington Pontiac's petition, citation, and interrogatories. Under La. C.C.P. art. 2411B, the garnishment seizure was not effective until October 29, 2001, which is the date the clerk of court was served with Covington Pontiac's petition, citation, and interrogatories. Because La. C.C.P. art. 2411C imposes no duty of a continuing nature on the garnishee, requiring only that she respond "as to the property ... in [her] possession or control at the time the garnishment interrogatories were served on [her]," mindful that the clerk of court acted pursuant to a court order of disbursement which was issued before the garnishment seizure was effectuated, the record duly establishes that the clerk of court's answers were not erroneous. Thus, the trial court correctly determined that the answers provided by the clerk of court were correct.[5]
Moreover we note, under the facts presented in this case, the clerk of court could not be liable to Covington Pontiac. According to the provisions of La. R.S. 13:760:
No clerk of court and no deputy of such officer who performs any act or issues any order in conformity with the written order or judgment of any judge of a court in this state shall be liable in either his individual or official capacity to any person, firm, or corporation for any damage as the result of such action.
See also La. R.S. 13:476.
It is abundantly clear that the clerk of court disbursed the money to David Guidry *61 "in conformity with the written order... of [a] judge of [the Twenty-second Judicial District C]ourt," and so advised Covington Pontiac in her sworn answers. Thus, under La. R.S. 13:760 the clerk of court cannot be held liable to Covington Pontiac, in either her individual or official capacity, for any damage the judgment creditor allegedly may have sustained as the result of the clerk of court's disbursal of $46,500.00 from the court registry withdrawn in accordance with the October 23, 2001 order of the Division G trial court.
In the trial court, and on appeal, the parties assert the issue before the court is who is the proper party to make garnishee when a judgment creditor seeks to seize money deposited in the court registry in which the judgment debtor has an interest. Although Covington Pontiac named her as garnishee, citing La. R.S. 13:474, the clerk of court contends that hers is merely a ministerial, administrative positionakin to a bookkeeperand that it is either Hibernia National Bank (as the fiscal agent appointed by the district court judges, see La. R.S. 13:475), who has actual possession over the money or the district court judges, who have control over the property on deposit in the court registry, that is properly made garnishee when a judgment creditor seeks to seize money held in the court registry. Because on the effective date of Covington Pontiac's seizure, the deposited money was duly subject to the trial court's order of disbursal, we find it unnecessary to address this, and we pretermit such a discussion.
For these reasons, we find that Covington Pontiac's rule to traverse was correctly dismissed.

DECREE
The trial court's judgment, dismissing Covington Pontiac's rule to traverse the answers to garnishment interrogatories provided by the clerk of court, is affirmed. Appeal costs are assessed against Covington Pontiac-Buick-GMC Trucks, Inc. and Eddie Pablovich.
AFFIRMED.
WHIPPLE, J., dissents with reasons.
WHIPPLE, J., dissenting.
As noted by the majority, the seizure of property belonging to a judgment debtor and under the possession and control of the garnishee is effective upon service of the garnishment petition, citation and interrogatories. LSA-C.C.P. art. 2411(B). Moreover, other than as is statutorily applicable to garnishments of wages, a garnishment is not continuing in nature, but, rather, the garnishee need only respond as to property of the judgment debtor in his possession or under his control at the time the garnishment interrogatories are served upon him. LSA-C.C.P. art. 2411(C).
In finding no error in the clerk of court's answers to garnishment interrogatories that she did not have possession of any funds belonging to David Guidry, the majority notes that on October 23, 2001, when the Division G judge ordered disbursal of $46,500.00 to David Guidry, the clerk of court had not yet been served with Covington Pontiac's petition, citation and interrogatories. However, while the garnishment interrogatories had not yet been served upon the clerk of court on October 23, 2001, when the Division G judge ordered disbursal of that sum to David Guidry, the garnishment interrogatories had in fact been served on the clerk of court prior to her actions in actually releasing those funds on October 30, 2001.
Thus, on the date the clerk of court was served with the garnishment interrogatories, i.e., October 29, 2001, she had not yet disbursed any sums to David Guidry, and those sums were in fact in the registry of the court. In fact, in her answers to *62 garnishment interrogatories, the clerk of court acknowledged that on the date she was served with the garnishment interrogatories, the sum of $93,749.04 was on deposit in the registry of the court, a sum which included the $46,874.52 that she later released to David Guidry. Nonetheless, she contended that she did not have any property of David Guidry in her possession or control as clerk of court on the date the garnishment interrogatories were served upon her, arguing that the funds in the registry of the court were instead in the possession of the Twenty-second Judicial District Court and/or Hibernia National Bank.
It is clear that at the time the garnishment interrogatories were served upon the clerk of court, funds belonging to David Guidry were in fact on deposit in the registry of the court. As such, pursuant to LSA-C.C.P. art. 2411(B), those funds were effectively seized on October 29, 2001, when the garnishment were served upon the clerk of court, who, pursuant to LSA-C.C.P. art. 2411(C), had a duty to declare her possession of those funds in her answers to interrogatories unless, as she argues, she, as clerk of court, exercises no possession or control over any sums on deposit in the registry of the court.
Accordingly, I disagree with the majority's contention in footnote 5 of the majority opinion that the issue of "who is the proper party to make garnishee when a judgment creditor seeks to seize money deposited in the court registry for which the judgment debtor has an interest" is inapposite. Rather, it is the crucial determination to be made in determining whether the clerk of court's answers to garnishment interrogatories, denying possession or control of funds belonging to David Guidry that were on deposit in the registry of the court at the time the garnishment were served upon her, were erroneous and should have been traversed.
The trial court in the instant matter determined that the clerk of court did not have custody or control over funds held in the registry of the court and, thus, that the clerk of court was not a proper garnishee. Covington Pontiac contends on appeal that this finding was in error. I agree.
The test of a garnishee's liability to the judgment creditor is whether the garnishee has in his possession or under his control the principal debtor's property, funds or credits for the recovery of which the debtor has a present, subsisting cause of action. LSA-C.C.P. art. 2411; All Star Floor Covering, Inc., 2000-2049 at p. 4, 804 So.2d at 708.
In the court below, the clerk argued that pursuant to LSA-R.S. 13:474, the district judges of the Twenty-second Judicial District Court had the authority to designate the fiscal agent and depository of all monies received by the court, and that the bank so designated as the fiscal agent shall be constituted the "registry of the court." She noted that the registry of the court for the Twenty-second Judicial District Court is Hibernia National Bank.
The clerk further averred that pursuant to LSA-R.S. 13:475(A), the only responsibility of the clerk of court with regard to the registry of the court is to keep a record of the registry of court, indexing every order or judgment that orders either a deposit into or a withdrawal from the registry of court, a duty which she characterized as "nothing more than a bookkeeper" function. Thus, the clerk of court contended that funds held in the registry of the court were not in her possession, but rather were in the possession of Hibernia. Consequently, she contended that she was not a proper garnishee and that service of the garnishment interrogatories on her office did not effect a seizure of the funds in the registry of the court. The trial court (and the majority herein) agreed.
*63 However, in addition to the duties outlined in LSA-R.S. 13:475, the clerk has further responsibilities with regard to funds held in the registry of the court. Pursuant to LSA-R.S. 13:476, deposits into the registry of the court shall be made "by the clerk of court in the manner directed by the judge of the district, or by the court of superior jurisdiction" and withdrawals from the registry of court shall be made "only in accordance with the provisions of the order or judgment of the court having jurisdiction."
Additionally, pursuant to LSA-R.S. 39:1211, the clerk is a "local depositing authorit[y]," and, as such, is required to deposit in the bank selected as the clerk's fiscal agent "[a]ll funds deposited in the registry of any court or coming into the hands of the clerk of court in any judicial proceedings and not belonging to such officer." LSA-R.S. 39:1231. Thus, I disagree with the position that the clerk of court's only duty with regard to funds held in the registry of the court is the "bookkeeper" function of maintaining a record of the registry of the court. Rather, the clerk of court is also responsible for depositing and withdrawing sums held in the registry of the court, in accordance with the court's orders, and, accordingly, exercises some possession and control over those funds.[1]
In a case with some similarities to the instant matter, the Louisiana Supreme Court recognized that a valid attachment may be made as to property held by the clerk of court through a garnishment proceeding naming the clerk of court as garnishee. Whitney Central Trust & Savings Bank v. Norton, 157 La. 199, 206, 102 So. 306, 309 (1924). In Norton, the plaintiff bank filed suit incivil district court, naming the clerk of criminal district court as garnishee, and caused an attachment to be issued as to certain funds held by the clerk of the criminal district court. Norton, 157 La. at 201, 102 So. at 307. However, despite the attachment proceedings, the clerk of the criminal district court released the funds to the judgment debtor, relying upon a later-rendered order of the criminal district court. Norton, 157 La. at 203, 102 So. at 308.
In holding that the garnishment and attachment were valid, the Court deemed money held by a court to be in the possession of the clerk of court as an officer of the court, although acknowledging that the possession by the clerk of such funds was subject to the orders of the court. Norton, 157 La. at 207, 102 So. at 309; see also Samuels v. Parsons, 146 La. 262, 270, 83 So. 548, 551 (1919)(Clerk of court is ex officio custodian of funds coming into the registry of the court). Noting that the money at issue had been lawfully seized under the attachment and garnishment naming the clerk of court as garnishee, the Court held that when the clerk of court paid the money over to the judgment debtor, he did so at his peril. Norton, 157 La. at 207, 102 So. at 309. Notably, the fact that the clerk of court was acting pursuant to an order of the criminal district court did not protect the clerk where the garnishment proceedings had been instituted against him prior to the rendition of the subsequent order of disbursal. See Norton, 157 La. at 207, 102 So. at 309.
Additionally, the particular facts of this case support a finding that the clerk exercised, at the very least, some possession and control over the funds held in the *64 registry of the court. Specifically, the funds held in the registry of the court in the Guidry v. Guidry community property proceeding were paid to the St. Tammany Parish clerk of court, who then deposited the funds into the account of the registry of the court. Additionally, the account established at Hibernia National Bank as the registry of the court is entitled "St. Tammany Parish Clerk of Court," and the signatories on the account are Malise Prieto, the clerk of court, and two of her employees. Withdrawals from the registry of the court are made by a Hibernia employee at the direction of the clerk of court, albeit only as set forth in an accompanying judgment of disbursal. Notably, Hibernia National Bank has no independent authority to release funds held in the registry of the court account.
Considering the above jurisprudence, as well as the particular facts of this case, I conclude that the trial court erred in finding that the clerk had no control over the funds held in the registry of the court. Rather, as did the Court in Norton, I would conclude that on the date the garnishment interrogatories were served upon her, the clerk had in her possession and under her control, as an officer of the court, the funds held in the registry of the court, although her possession and control of those funds was not absolute, in that her actions with regard to those funds were subject to the orders of the court.
Accordingly, I would likewise conclude that the trial court erred in dismissing Covington Pontiac's rule to traverse the answers to garnishment interrogatories on the basis that the clerk did not have possession or control over the funds held in the registry of the court and, thus, that the clerk was not a properly named garnishee.
Additionally, I find no merit to the argument that the clerk is entitled to immunity pursuant to LSA-R.S. 13:760 under the facts presented herein. Under certain circumstances, a clerk of a district court may be liable for negligent acts in the performance of the duties of his office. See LSA-R.S. 13:758; LSA-R.S. 42:1441(A) & (B); LSA-R.S. 42:1441.2; LSA-R.S. 13:5108.1(3)(b). However, pursuant to LSA-R.S. 13:760, a clerk of court shall not be liable when he or she "performs any act or issues any order in conformity with the written order or judgment of any judge of a court in this state."
On appeal, the clerk of court argues that her authorization of the release of the funds in the registry of the court to Mr. Guidry was an act in conformity with the October 23, 2001 written order of the Division "G" judge, ordering disbursal of the funds to Guidry. Thus, she contends that she is protected from liability pursuant to LSA-R.S. 13:760. However, I note that in acting pursuant to the October 23, 2001 order of disbursal, the clerk ignored both the order in the garnishment proceeding naming her as garnishee and the resulting legal consequences. Stated simply, her employee ignored the garnishment seizure of those funds effected, pursuant to LSA-C.C.P. art. 2411(B), by the service of the garnishment interrogatories upon her. Once the petition of garnishment and accompanying order naming the clerk of court as garnishee were served upon the clerk of court, the seizure of the funds at issue was effected.
Clearly, as evidenced by the letter written to counsel for Guidry and Unicorn Nursery, the clerk of court was aware that the deposited funds were subject to seizure in that she (through her employee) had indicated that she was unable to release the funds pursuant to the October 23, 2001 order, due to the previously filed petition for garnishment and resulting seizure of those funds. Nonetheless, the clerk's office employee chose to ignore the previous orders issued with regard to these funds.
*65 Although there is a paucity of jurisprudence interpreting the immunity granted by LSA-R.S. 13:760, I would conclude that this provision will not protect a clerk of court where the clerk, in honoring one order of the court, specifically ignores a valid seizure of those funds effected by service of the garnishment interrogatories upon her. Therefore, I would conclude that LSA-R.S. 13:760 does not protect the clerk of court from obligations as garnishee herein or from her employee's actions in authorizing the release of the funds at issue to Guidry in contravention of the prior properly instituted garnishment proceedings and the previously perfected garnishment seizure.[2]
Thus, in my view, the judgment of the trial court dismissing Covington Pontiac's rule to traverse garnishment interrogatories should be reversed. Accordingly, I respectfully dissent.
NOTES
[1] The judgment in a traversal of answers to interrogatories dismissing the rule is a final disposition of the controversy between the plaintiff and the garnishee. The judgment is conclusive as to those parties, leaving no other remedy or proceeding in the lower court against that particular garnishee. Carroll v. Wallace, 1 McGl. 9 (La.App. 1881). As such, it is a judgment subject to immediate appeal, see Carroll, 1 McGl. at 9; see Rapier v. Harris, 614 So.2d 301 (La.App. 4th Cir. 1993); see also Elizey Marine Supplies, Inc. v. Taylor, 237 So.2d 706, 707 (La.App. 4th Cir. 1970), and, therefore, properly before this court.
[2] According to Cynthia Guidry, Unicorn is a corporation owned and operated by her ex-husband's business partner. Noting that only her interest in the money held in the court registry was at issue, Cynthia Guidry averred that it was merely one day before the Guidrys appeared in court in the proceeding that resulted in the consent judgment in which they agreed to the distribution of their former community property that Unicorn chose to file its petition naming the clerk of court a garnishee and seeking to attach the money in the court registry.
[3] Between June 20, 2001, when the Division G trial court initially ordered $88,638.74 be placed in the registry and (by consent of the parties) $44,000.00 be disbursed to David Guidry, and October 23, 2001, when it ultimately ruled on the merits of David Guidry's interest in that money, a $5,000.00 deposit belonging to the Guidrys' former community was made into the court registry. Thus, the amount disbursed to David Guidry in accordance with the October 23, 2001 order reflects his one-half interest in the deposit and is, therefore, $2,500.00 greater than the disbursed amount ordered in the June 20, 2001, consent judgment.
[4] Apparently accounting for interest which accrued on the money while it was in the court registry, see La. R.S. 39:1231B, the clerk of court's sworn answer notes $46,874.52 as the exact amount disbursed pursuant to the October 23, 2001.
[5] Covington Pontiac's reliance on Whitney Central Trust & Svgs. Bank v. Norton, 157 La. 199, 102 So. 306 (1924), is misplaced. In Norton, the civil district court rendered a judgment dismissing the rule to quash a writ of attachment and garnishment against the criminal clerk of court "without prejudice to the right of the clerk of the criminal court to retain the money attached until final disposition of the criminal proceedings ... at which time, upon proper order, the clerk of said court will deliver the money in controversy to the civil sheriff to await final disposition of this case." 157 La. at 202-03, 102 So. at 307. When the clerk of the criminal court thereafter delivered the money to the criminal defendant/civil debtor via an ex parte order, it was "in utter disregard of the seizure of the money under the attachment proceedings." 157 La. at 203, 102 So. at 308. But the order that the criminal clerk violated was one of a district court judge which specifically directed that, upon proper order, the money held in the registry (for use as evidence in the criminal proceeding) be delivered to the civil district court for final disposition. Thus, in failing to conform to the previous order of the district court, the clerk of court acted at his peril. 157 La. at 207, 102 So. at 309. In this case, the "orders" addressing the money in the registry that Covington Pontiac suggests the clerk "ignored" were a judgment that did not in any manner address money that may have been held in the court registry and a writ of seizure and sale issued by a deputy of the clerk of court; a district court judgment pronouncing a ruling that addressed the money in the court registry was not among those orders. Thus, Norton is distinguishable from the facts presently before us.
[1] I note that the judgments discussed above in the instant matter ordered "the clerk of court" to either deposit or disburse the funds held in the registry of the court. In fact, this procedure was necessary in that the named signatory of the account of the registry of the court at Hibernia is Malise Prieto, clerk of court (and two of her employees).
[2] Likewise, I would not find that the clerk of court's actions in ignoring the garnishment proceedings and seizure of the funds at issue were discretionary or policy-making acts for which she could claim immunity pursuant to LSA-R.S. 9:2798.1. The clerk simply did not have the discretion to ignore the order instituting garnishment proceedings against her and the previously perfected seizure of those funds.